**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| HOWARD GREGORY CORNELIUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:06-cv-00812-JEO |
| | ) | |
| COACHMEN RECREATIONAL | ) | |
| VEHICLE COMPANY, L.L.C., | ) | |
| COACHMEN RECREATIONAL | ) | |
| VEHICLE COMPANY OF GEORGIA, | ) | |
| L.L.C., and MID-STATE RV CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the court is the motion to dismiss, or alternatively, to transfer venue filed by

Mid-State RV Center ("Mid-State") (doc. 5), the motion for joinder in Mid-State's motion to

transfer venue filed by Coachmen Recreational Vehicle Company, L.L.C., and Coachmen

Recreational Vehicle Company of Georgia, L.L.C. ("Coachmen") (doc. 16), and Mid-State's

adoption of Coachmen's motion to transfer to the extent it asserts that a transfer is appropriate

pursuant to a forum selection clause in the installment contract and security agreement that is

involved in this matter (doc. 20).[1]  The plaintiff did not respond to the defendants' arguments

until the night before oral argument.  (Doc. 17 & 18).  Therefore, the court afforded all three

parties the opportunity to supplement the record with additional law and evidence so that the

---

[1]Mid-State first filed its Motion to Dismiss or Transfer Venue (doc. 5) and later filed its brief and evidence in support of its motion (doc. 14 & 15) and Coachmen joined in Mid-State's motion to the extent Mid-State moved to have the case transferred (doc. 16).  In its joinder in Mid-State's motion to transfer, Coachmen raised a forum selection argument that Mid-State had not raised and Mid-State then moved to adopt Coachmen's argument regarding forum selection as its own.  The plaintiff now argues that Mid-State waived the forum selection argument because it did not raise it in its initial responsive pleading.  The court will address that argument herein.

At the hearing, the court denied Mid-State's motion to strike the plaintiff's response to its motion to dismiss or transfer. (Doc. 19).

court could adequately address the pertinent issues.  Specifically, the court afforded the plaintiff

an additional week to file any supplemental law or evidence in opposition to the defendants'

motions and the defendants an additional ten days to respond to the plaintiff's supplemental

filings.  The parties have now fully briefed and argued the issues.  Upon consideration, the court

finds that Mid-State's motion to dismiss (doc. 5) is due to be denied and the motions to transfer

(doc. 5 and 16) are due to be granted.  The court further finds that Mid-State's motion to adopt

the forum selection argument of Coachmen (doc. 20) is moot.

## PROCEDURAL BACKGROUND

On March 22, 2006, the plaintiff initiated this action in the Circuit Court of Blount

County, Alabama, alleging various claims, including breach of contract, breach of warranty,

Georgia lemon law, fraud, and unjust enrichment.  (Doc. 1 at Ex. A).[2]  On April 27, 2006,

Mid-State removed the action to this court,[3] asserting that the parties are completely diverse and

that the amount in controversy exceeds $75,000.00.  (Doc. 1 at pp. 1-3).

Mid-State now moves to have the court dismiss the plaintiff's complaint, or, alternatively,

to transfer the case to the Middle District of Georgia.  (Doc. 5 & 16).  Mid-State alleges that the

plaintiff's complaint is due to be dismissed premised on the fact that it lacks sufficient

"minimum contacts" with Alabama to satisfy jurisdictional requirements.  Alternatively, both

Mid-State and Coachmen allege that this case should be transferred to the Middle District of

Georgia pursuant to 28 U.S.C. § 1401(a) because the action "might have been brought" in the

Middle District of Georgia and, therefore may be transferred there, because the factors of

---

[2]Document 1 is the defendants' notice of removal.

[3]Coachmen joined in the notice of removal that same day.  (Doc. 2 & 3).

convenience and the interests of justice favor transfer, and because the contract between the

plaintiff and Mid-State contained a forum selection clause that provided that exclusive

jurisdiction would be with Georgia in the event of a dispute.  (Doc. 14; Doc. 16 at Ex. 1; Doc. 20

at Ex. A - 1).

## FACTUAL BACKGROUND

On March 20, 2005, the plaintiff, Howard Cornelius, approached a Mid-State

representative at the Atlanta Motor Speedway in Hampton, Georgia, about purchasing an RV.[4]

(Doc. 14 at p. 2).  The plaintiff paid a down payment for an RV and Mid-State custom ordered a

Sportcoach RV for him from its Byron, Georgia location.  (Chris Delanghe Aff. at ¶¶ 5-6).[5]  On

April 29, 2005, the plaintiff traveled to Georgia to sign the contract.  (*Id*. at ¶ 8).  On May 7,

2005, when the custom RV arrived, the plaintiff sent a representative to Georgia to pick it up.

(*Id*. at ¶ 9).

The plaintiff began experiencing problems with the RV.  On one occasion, the RV was in

Talladega, Alabama, when the air conditioning malfunctioned.  When a passenger (Tom

Chastain) in the RV called Mid-State about the problem, he was told that Mid-State had a display

set up at the Talladega Superspeedway.  A representative from Mid-State contacted Chastain and

told him to come pick him up so he could attempt to repair the air conditioner.  The

representative was able to temporarily fix the air conditioner at the Talladega Superspeedway.

---

[4]In his initial brief, the plaintiff asserts that "[d]iscovery will show that while the plaintiff did purchase the RV in Atlanta, Georgia, the plaintiff first inquired about the RV at one of Mid-State's displays in Talladega, Alabama." (Doc. 18 at § D).  However, the plaintiff was given additional time to supplement his evidence at this juncture and he did not submit anything to substantiate this assertion.  Therefore, the court will not consider this unsupported assertion in its determination of these motions.

[5]Delanghe's affidavit is located at document 15, exhibit 2, in the court's record of the case.

(Chastain Aff.).[6]  All other repairs to the RV have been made in Georgia.  Despite multiple

attempts, the defendants have been unable to conform the vehicle to its warranty to the plaintiff's

satisfaction.  (Complaint at ¶¶ 6-7).

## DISCUSSION

### 1.  Standard of Review

When a non-resident defendant challenges personal jurisdiction and no evidentiary

hearing is required, the plaintiff must establish a prima face case of jurisdiction.  *Consolidated*

*Development Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1291 (11th Cir. 2000).  *See also Morris v.*

*SSE, Inc.,* 843 F.2d 489, 492 (11th Cir. 1988).  This burden is satisfied if the plaintiff presents

sufficient evidence to withstand a directed verdict.  *Consolidated*, 216 F.3d at 1291.  In

evaluating the evidence, the court must construe the plaintiff's allegations as true as far as they

are consistent with the defendants' affidavits and depositions.  *Id*.  To the extent that the

plaintiff's allegations are contradicted by the defendants' affidavits and depositions, the court

will construe all reasonable inferences in favor of the non-movant plaintiff.  *Id*.  *See also Morris*,

843 F.2d at 492 ("Where the evidence presented by the parties' affidavits and deposition

testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant

plaintiff.").

### 2.  Personal Jurisdiction – Background

In *Huey v. American Truetzschler Corp.*, 47 F. Supp. 2d 1342, 1346 (M.D. Ala. 1999),

United States District Judge Myron H. Thompson stated as follows:

> When a defendant challenges personal jurisdiction, the plaintiff has the

---

[6]Chastain's affidavit is located at document 18.

twin burdens of establishing that personal jurisdiction over the defendant comports with (1) the forum state's long-arm provision and (2) the requirements of the due-process clause of the fourteenth amendment to the United States Constitution. *See Olivier v. Merritt Dredging Co*., 979 F.2d 827, 830 (11th Cir. 1992), *cert. denied*, 507 U.S. 983, 113 S. Ct. 1577, 123 L. Ed. 2d 145 (1993). Because Alabama's long-arm provision, Ala. R. Civ. P. 4.2(a), authorizes the assertion of personal jurisdiction to the limits of the United States Constitution, a plaintiff may carry both these burdens by demonstrating that personal jurisdiction over the defendant meets the requirements of federal due process. *Id*. Due process requires, first, that the defendant have "certain minimum contacts" with the forum state and, second, that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Burnham v. Superior Court of California, County of Marin*, 495 U.S. 604, 618, 110 S. Ct. 2105, 2114-15, 109 L. Ed. 2d 631 (1990) (quoting *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)).[7]

The Supreme Court has identified two types of personal jurisdiction: specific and general. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 nn.8 & 9, 104 S. Ct. 1868, 1872 nn.8 & 9, 80 L. Ed. 2d 404 (1984). General jurisdiction arises from a party's frequent contacts with the forum state unrelated to the litigation. *See id*. at 414 n.9, 104 S. Ct. at 1872 n.9. Specific jurisdiction derives from a party's contacts with the forum that are related to the cause of action. *Id.* at 414 n.8, 104 S. Ct. at 1872 n.8. . . .

*See also Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996), citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

The dispositive issues in the present case are whether Mid-State had the requisite minimum contacts and whether this court's exercise of personal jurisdiction over Mid-State comports with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Mutual Service Ins. Co. v. Frit Industries, Inc.,* 358 F.3d 1312, 1319 (11th Cir.

---

[7]Alabama's long-arm statute, ALABAMA RULE OF CIVIL PROCEDURE 4.2(b), provides that a non-resident defendant is within the jurisdiction of Alabama courts "when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States. . . ." ALA. R. CIV. P. 4.2(b). The Supreme Court of Alabama has interpreted the reach of Rule 4.2(b) (formerly ALA. R. CIV. P. 4.2(a)(2)) as extending personal jurisdiction as far as federal due process will allow. *Sieber v. Campbell*, 810 So. 2d 641, 644 (Ala. 2001).

2002).  Three decisions of the United States Supreme Court are instructive.

In the first decision, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980), the issue was whether an Oklahoma court could exercise *in personam* jurisdiction over a nonresident automobile dealer and its wholesale distributor (World-Wide Volkswagen) when their only connection with Oklahoma was the fact that an automobile sold in New York to New York residents was involved in an accident in Oklahoma. *Id.*, 444 U.S. at 287.  Finding that the defendants' contact was insufficient, the Court reiterated the following guiding principles:

> . . . .  The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions.  It protects the defendant against the burdens of litigating in a distant or inconvenient forum.  And it acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.
>
> The protection against inconvenient litigation is typically described in terms of "reasonableness" or "fairness."  We have said that the defendant's contacts with the forum State must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington, supra*, at 316, 66 S. Ct., at 158, quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 342, 85 L. Ed. 278 (1940).  The relationship between the defendant and the forum must be such that it is "reasonable . . . to require the corporation to defend the particular suit which is brought there."  326 U.S., at 317, 66 S. Ct., at 158.  Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, *see McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 201, 2 L. Ed. 2d 223 (1957); the plaintiff's interest in obtaining convenient and effective relief, *see Kulko v. California Superior Court, supra*, 436 U.S., at 92, 98 S. Ct., at 1697, at least when that interest is not adequately protected by the plaintiff's power to choose the forum, cf. *Shaffer v. Heitner*, 433 U.S. 186, 211, n.37, 97 S. Ct. 2569, 2583, n.37, 53 L. Ed. 2d 683 (1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, *see Kulko v. California Superior Court, supra*, 436 U.S., at 93, 98,

98 S. Ct., at 1697, 1700.

*World-Wide Volkswagen*, 444 U.S. at 292.  The Supreme Court concluded that the facts and

circumstances in that case were wholly insufficient to predicate exercise of state-court

jurisdiction.  It stated:

> Applying these principles to the case at hand, [ ] we find in the record
> before us a total absence of those affiliating circumstances that are a necessary
> predicate to any exercise of state-court jurisdiction.  Petitioners carry on no
> activity whatsoever in Oklahoma.  They close no sales and perform no services
> there.  They avail themselves of none of the privileges and benefits of Oklahoma
> law.  They solicit no business there either through salespersons or through
> advertising reasonably calculated to reach the State.  Nor does the record show
> that they regularly sell cars at wholesale or retail to Oklahoma customers or
> residents or that they indirectly, through others, serve or seek to serve the
> Oklahoma market.  In short, respondents seek to base jurisdiction on one, isolated
> occurrence and whatever inferences can be drawn therefrom: the fortuitous
> circumstance that a single Audi automobile, sold in New York to New York
> residents, happened to suffer an accident while passing through Oklahoma.

*Id*. at 295 (footnote omitted).  To the extent the plaintiffs argued that jurisdiction was proper

because it was "foreseeable" that the vehicle would cause injury in Oklahoma, the Court rejected

that contention stating:

> If foreseeability were the criterion, a local California tire retailer could be
> forced to defend in Pennsylvania when a blowout occurs there, *see Erlanger
> Mills, Inc. v. Cohoes Fibre Mills, Inc.*, 239 F.2d 502, 507 (CA4 1956); a
> Wisconsin seller of a defective automobile jack could be haled before a distant
> court for damage caused in New Jersey, *Reilly v. Phil Tolkan Pontiac, Inc.*, 372 F.
> Supp. 1205 (N.J. 1974); or a Florida soft-drink concessionaire could be
> summoned to Alaska to account for injuries happening there, *see Uppgren v.
> Executive Aviation Services, Inc.*, 304 F. Supp. 165, 170-171 (Minn. 1969).  Every
> seller of chattels would in effect appoint the chattel his agent for service of
> process.  His amenability to suit would travel with the chattel.  We recently
> abandoned the outworn rule of *Harris v. Balk*, 198 U.S. 215, 25 S. Ct. 625, 49 L.
> Ed. 1023 (1905), that the interest of a creditor in a debt could be extinguished or
> otherwise affected by any State having transitory jurisdiction over the debtor.
> *Shaffer v. Heitner*, 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977).  Having
> inferred the mechanical rule that a creditor's amenability to a *quasi in rem* action

travels with his debtor, we are unwilling to endorse an analogous principle in the present case.

This is not to say, of course, that foreseeability is wholly irrelevant.  But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.  *See Kulko v. California Superior Court, supra*, 436 U.S., at 97-98, 98 S. Ct., at 1699-1700; *Shaffer v. Heitner*, 433 U.S., at 216, 97 S. Ct., at 2586, and *see id.*, at 217-219, 97 S. Ct., at 2586-2587 (Stevens, J., concurring in judgment).  The Due Process Clause, by ensuring the "orderly administration of the laws," *International Shoe Co. v. Washington*, 326 U.S., at 319, 66 S. Ct., at 159, gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla*, 357 U.S., at 253, 78 S. Ct., at 1240, it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State.  Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.  The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.  *Cf. Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill. 2d 432, 176 N.E. 2d 761 (1961).

*Id.*, 444 U.S. at 296-97 (footnote omitted).

In the second case, *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985), the issue was whether the United States District Court for the Southern District Court of Florida could exercise personal jurisdiction over a Michigan franchisee that allegedly breached a franchise agreement with Burger King, a Florida corporation

8

with its principal office in Miami. *Id.*, 471 U.S. at 464. Finding that the trial court could exercise jurisdiction over the franchisee, the Supreme Court stated that the non-consenting defendant must have "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Id.*, 471 U.S. at 472 (citing *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S. Ct. 2569, 2587, 53 L. Ed. 2d 683 (1977) (Stevens, J., concurring)). The "'fair warning' requirement is satisfied if the defendant has 'purposefully directed' [its] activities at residents of the forum . . . , and the litigation results from alleged injuries that 'arise out of or relate to' those activities . . . ." *Id.*, 471 U.S. at 472 (citations omitted). The Court also noted that the "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or the 'unilateral activity of another party or third person.'" *Id.*, 471 U.S. at 475. By way of example, the Court further stated:

> Thus "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" and those products subsequently injure forum consumers. *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S., at 297-298, 100 S. Ct., at 567-568. Similarly, a publisher who distributes magazines in a distant State may fairly be held accountable in that forum for damages resulting there from an allegedly defamatory story. *Keeton v. Hustler Magazine, Inc., supra; see also Calder v. Jones,* 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984) (suit against author and editor). . . .

*Id.*, 471 U.S. at 473. Lastly, the Court stated:

> Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S., at 320, 66 S. Ct., at 160. Thus courts in "appropriate case[s]" may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most

9

efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S., at 292, 100 S. Ct., at 564.

*Id.*, 471 U.S. at 476-77.

The Supreme Court's most recent pronouncement in this area is *Asahi Metal Industries Co. v. Superior Court of California, Solano County*, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987). In that case, the issue was whether a California court could exercise personal jurisdiction over an indemnification claim against a Japanese manufacturer who had no contacts with that State after the victim's suit against the Taiwanese motorcycle tire tube manufacturer had been settled and dismissed, leaving only the indemnification claim between the two foreign companies. The Justices unanimously agreed that the state court's exercise of jurisdiction "would offend traditional notions of fair play and substantial justice" under the circumstances. *Id.*, 480 U.S. at 113. However, the Justices did not agree on the appropriate standard for reviewing such claims.

Justice O'Connor, with three other Justices concurring, articulated what has become known as the "stream of commerce plus" test, which provides:

> . . . . The "substantial connection" . . . between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*. . . . The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum state, for example, designing the product for the market in the forum state, advertising in the forum state, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state.

*Id.*, 480 U.S. at 112 (citations omitted and italics in original). The Court further noted that even

10

assuming that the valve manufacturer was aware that some of the valves sold to the tube manufacturer would be incorporated into tire tubes sold in California there still was no showing that the defendant purposefully availed itself of the California market warranting a finding of personal jurisdiction.[8]  In a concurring opinion Justice Brennan, who was joined in part by three other Justices, stated that a defendant's awareness that the stream of commerce will carry its product into the relevant forum is sufficient for jurisdictional purposes.  *Asahi*, 480 U.S. at 117.  Specifically, he stated, "The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale.  As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise."  *Id*.  Justice Stevens, who was joined in part by three other Justices, was critical of the plurality in that he did not perceive the relevant lines being readily discernible.  He stated, "The plurality seems to assume that an unwavering line can be drawn between 'mere awareness' that a component will find its way into the forum State and 'purposeful availment' of the forum's market. . . ."  *Id*. at 122 (citation omitted).

        With these principals in mind, the court will examine the propriety of exercising personal jurisdiction in the present matter.

---

[8] The Court noted:

> [The valve manufacturer] does not do business in California.  It has no office, agents, employees, or property in California.  It does not advertise or otherwise solicit business in California.  It did not create, control, or employ the distribution system that brought its valves to California.  *Cf. Hicks v. Kawasaki Heavy Industries*, 452 F. Supp. 130 (M.D. Pa. 1978).  There is no evidence that [the valve manufacturer] designed its product in anticipation of sales in California.  *Cf. Rockwell International Corp. v. Costruzioni Aeronautiche Giovanni Agusta*, 553 F. Supp. 328 (E.D. Pa. 1982).

*Asahi*, 480 U.S. at 112-13.

### 3.  General Personal Jurisdiction

"General jurisdiction exists whenever the defendant's connection with the forum state is 'continuous and systematic' – there need be no nexus between the forum and the litigation." *Lasalle Bank N.A. v. Mobile Hotel Properties, LLC*, 274 F. Supp. 2d 1293, 1297 (S.D. Ala. 2003) (quoting *Helicopteros Nacionales de Colombia,* 466 U.S. at 416).  *See also Consolidated*, 216 F.3d at 1292 (general jurisdiction arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated).  "The 'nonresident corporation's contacts with the forum that are unrelated to the litigation must be substantial' to warrant the exercise of general jurisdiction."  *The Nippon Credit Bank LTD. v. Matthews,* 291 F.3d 738, 747 (11th Cir. 2002) (quoting *Consolidated*, 216 F.3d at 1292).  "Thus, the due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction." *Consolidated*, 216 F.3d at 1292.

The defendant argues that the exercise of general personal jurisdiction in this case would be inappropriate because its contacts with Alabama simply are insufficient under the circumstances.  In support of its argument, the defendant cites to *Butler v. Beer Across America*, 83 F. Supp. 2d 1261 (N.D. Ala. 2000) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

In *Butler*, the court found the following points relevant in determining that it did not have general personal jurisdiction over the defendant:

> [P]laintiff has not offered any competent evidence to seriously controvert defendants' averments that they are not registered to do business in Alabama; that they own no property in the state; that they have no agents in Alabama; that their key personnel have not even visited the state; that they do no place advertisement with Alabama media outlets (except for what nationally placed advertisements

may reach the state) or engage in any other significant promotions targeting the state, which would rise to such level as would justify an exercise of general jurisdiction . . . .

*Butler*, 83 F. Supp. 2d 1266.  In *Helicopteros*, the plaintiffs initiated a wrongful death action in Texas state court after four individuals were killed in a helicopter accident in Peru involving a defendant that was engaged in the business of providing transportation for oil and construction companies in that country.  The Court held that the defendant's contacts with Texas were insufficient under the due process clause for the exercise of general personal jurisdiction.  The evidence before the Court showed that the defendant did

> not have a place of business in Texas and never has been licensed to do business in the State.  Basically, [its] contacts with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from Bell Helicopter for substantial sums;[9] and sending personnel to Bell's facilities in Fort Worth for training.

*Id.*, 466 U.S. at 416.

In the instant case, the defendant has presented affidavit testimony through its President and CEO, Lee Pickard, and its representative, Chris Delanghe, that, among other things, Mid-State is incorporated in Georgia, has its principal place of business in Georgia, has no place of business in Alabama, has no direct contacts with Alabama, is not qualified to do business in

---

[9]In *Helicopteros*, the Court noted that the financial contacts the defendant had with the state of Texas were significant.  *Id.*, 666 U.S. at 411.  It stated, in pertinent part, as follows:

> During the years 1970-1977, it purchased helicopters (approximately 80% of its fleet), spare parts, and accessories for more than $4 million from Bell Helicopter Company in Fort Worth.  In that period, Helicol sent prospective pilots to Fort Worth for training and to ferry the aircraft to South America.  It also sent management and maintenance personnel to visit Bell Helicopter in Fort Worth during the same period in order to receive "plant familiarization" and for technical consultation.  Helicol received into its New York City and Panama City, Fla., bank accounts over $5 million in payments from Consorcio/WSH drawn upon First City National Bank of Houston.

*Id.*

Alabama, has no offices or facilities in Alabama, owns no property, bank accounts, telephone listing or mailing address in Alabama, does not solicit customer or business outside of Georgia, has not entered into any contracts in Alabama, has not transacted any business in Alabama, has not contracted to supply services or goods in Alabama, has not availed itself to the privileges and benefits of Alabama law, has no agents or employees in Alabama, has not advertised in Alabama, and could not foresee that it would be sued in Alabama for personal injuries relating to the RV sale made to the plaintiff in the state of Georgia.  (Pickard Aff.)[10]  Additionally, Mid-State argues that Cornelius came to Georgia on his own initiative to purchase the RV and that it did not solicit his business.  (Delanghe Aff.).[11]  The plaintiff asserts, however, that Mid-State did have agents in Alabama on at least one occasion in September 2005 at the Talladega Superspeedway and that Mid-State performed work on the RV in Alabama.

Construing the facts in the light most favorable to the non-movant, as the court must do at this juncture, the court finds that, at most, the evidence supports the conclusion that Mid-State had agents in Alabama on at least one occasion.  The question, then, is whether Mid-State's presence in Alabama on that occasion is sufficient for this court to establish personal jurisdiction over it.  Mindful of the fact that the defendants' contact with the state "'must be substantial' to warrant the exercise of general jurisdiction," the court finds that general jurisdiction does not exist here.  Although the plaintiff has established that at least one Mid-State representative was present in Alabama at an advertising display on at least one occasion, the plaintiff has not established anything more than that.  That presence, without more, is not "substantial" enough

---

[10]Lee Pickard's affidavit is located at document 15 in the court's record of the case.

[11]Chris Delanghe's affidavit is located at document 15 in the court's record of the case.

for this court to exercise general jurisdiction over Mid-State.

### 4. Specific Personal Jurisdiction

In contrast to general personal jurisdiction, as previously noted, "a court can assert specific jurisdiction over a person with a more attenuated connection to the forum when there is a sufficient nexus between the forum and the matter at issue." *Lasalle Bank*, 274 F. Supp. 2d at 1297.

> . . . . For specific jurisdiction to apply, "[t]he nonresident defendant's contacts with the forum must be such that he has 'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign. A person has fair warning if he 'purposefully directs' his activities at the forum, and claims of injury result from these activities'. *Ruiz de Molina v. Merritt & Furman Insurance Agency, Inc*., 207 F.3d 1351, 1355 (11th Cir. 2000) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). To constitute minimum contacts for purposes of specific jurisdiction, a defendant's contacts with the applicable forum must satisfy three criteria: first, the contacts must be related to the plaintiff's cause of action or have given rise to it; second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws; and third, the contacts must be such that the defendant should reasonably anticipate being haled into court in the forum. *See Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1546 (11th Cir. 1993), *cert. denied,* 508 U.S. 907, 113 S. Ct. 2334, 124 L. Ed. 2d 246 (1993).

*Lasalle*, 274 F. Supp. 2d at 1297.

To satisfy due process considerations for purposes of specific personal jurisdiction, the defendant must have purposefully established sufficient minimum contacts in the state of Alabama that are related to the plaintiff's cause of action. *Morris*, 216 F.3d at 492; *International Shoe*, 326 U.S. at 316. The defendant must have performed "some act by which it purposefully avail[ed] itself of the privilege of conducting activities with [Alabama], thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 476 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). As the court in

15

*Merchantile Capital, LP v. Federal Transtel, Inc.*, 193 F. Supp. 2d 1243 (N.D. Ala. 2002),

noted:

> . . . . It is well established that the requisite minimum contacts will exist to
> support the exercise of specific jurisdiction "only where the defendant
> 'purposefully avails itself of the privilege of conducting activities within the
> forum State, thus invoking the benefits and protections of its laws.'" . . . . quoting
> *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958).
> "This 'purposeful availment' requirement ensures that a defendant will not be
> haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated'
> contacts, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. [770, 774, 104 S. Ct. 1473,
> 79 L. Ed. 2d 790 (1984)]; *World-Wide Volkswagen Corp. v. Woodson,* [444 U.S.
> 286, 299, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)], or of the 'unilateral activity of
> another party or a third person,' *Helicopteros Nacionales de Colombia, S.A. v.
> Hall,* [466 U.S. 408, 417, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)]." *Burger
> King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528
> (1985). Thus, "the defendant's [own] conduct and connection with the forum
> State [must be] such that he should reasonably anticipate being haled into court
> there." *World-Wide Volkswagen,* 444 U.S. at 297, 100 S. Ct. 559.

*Mercantile Capital*, 193 F. Supp. 2d at 1248.

The plaintiff's principal claims in this action are that Mid-State sold him a defective RV

and misrepresented the condition of the RV. The majority of the events that underlie the

plaintiff's claims occurred in Georgia. While attending a race at the Atlanta Motor Speedway,

the plaintiff approached a Mid-State representative and described the type RV he wanted and

wrote a check for the down payment. (Delanghe Aff. at ¶¶ 4-5). Mid-State then ordered the

customized RV from a company in Indiana. (Delanghe Aff. at ¶ 6).

Approximately one month later, the plaintiff traveled back to Georgia to sign the sales

contract and fill out the necessary paperwork at Mid-State's dealership. (Delanghe Aff. at ¶ 8).

The plaintiff's representative then traveled back to Georgia to pick up the RV when it arrived.

(Delanghe Aff. at ¶ 9). All repairs that were made on the RV were made in Georgia, with the

exception of one repair that was made at the Talladega Superspeedway.  (Delanghe Aff. at ¶¶ 10-11).

The fact that the RV ended up in Alabama is insufficient to establish personal jurisdiction in this case.  As stated previously, "the placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." *Asahi*, 480 U.S. at 112.  The only facts before the court that could warrant the exercise of personal jurisdiction over Mid-State are that a Mid-State representative was present in the State of Alabama at an advertising display and he made repairs on the plaintiff's RV while in Alabama.  The court finds this contact sufficient to allow this court to exercise personal jurisdiction over Mid-State in this instance.  Therefore, Mid-State's motion to dismiss is due to be denied.

### 5.  Venue[12]

28 U.S.C.  § 1404(a) (1982) permits the district court to transfer an action to another proper venue if it is "for the convenience of parties and witnesses" and it is "in the interest of justice."  The burden is on the movant to demonstrate to the district court that another venue is more convenient and in the interest of justice.  *In re Ricoh Corporation*, 870 F.2d 570, 572-73 (11th Cir. 1989).  "[T]his burden is high when a defendant asks the court to transfer a case from the plaintiff's home forum."  *Irwin v. Zila, Inc.*, 168 F. Supp. 2d 1294, 1296 (M.D. Ala. 2001).

Determining whether to transfer the case to another venue is based on 28 U.S.C. § 1404 (1982) and not 28 U.S.C. § 1391 since the case has already been removed from state court to this

---

[12]Both Mid-State and Coachmen argue that the sales contract contains a forum selection clause mandating that the Middle District of Georgia is the appropriate forum.  The plaintiff, however, argues that the forum selection clause is invalid for four distinct reasons, none of which either defendant contests.  Because the court finds that transfer of venue is proper under 28 U.S.C. § 1404(a) analysis, it declines to entertain the plaintiff's forum selection arguments herein.

court. *Hollis v. Florida State University*, 259 F.3d 1295, 1299 (11th Cir. 2001).

> In removed actions the general venue provision, 28 U.S.C. § 1391, does not apply. Instead § 1441(a), by requiring removal to the district court for the district in which the state action is pending, properly fixes the federal venue in that district. Thus, once a case is properly removed to federal court, a defendant cannot move to dismiss on § 1391 grounds.

*Id.* (citing *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953)).  However, a defendant who wants to remove the action to another venue may still rely on 28 U.S.C. § 1404.  *Hollis*, 259 F.3d at 1300.  Title 28, United States Code, Section 1404(a) states, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

A two-step process is used to determine whether the motion to transfer should be granted. *Irwin,* 168 F. Supp. 2d at 1296.  "The first step is to 'determine whether the action could originally have been brought in the transferee forum.'"  *Id.* (quoting *Folkes v. Haley*, 64 F. Supp. 1152, 1155 (M.D. Ala. 1999)).  Neither party disputes that the lawsuit could have been brought in the Middle District of Georgia.  Therefore, only the second step is at issue.

The second issue requires the court to decide which forum will be more convenient.  *Id.* It is important to consider the following factors:

> [C]ourts generally examine the location of principal material witnesses, 'the relative ease of access to sources of proof,' and the ability of the parties to bear the expense of changing the forum . . . '[W]here the operative facts underlying the cause of action transpired' is a consideration for convenience . . . 'Courts look to a forum where the trial is 'most easy, expeditious and inexpensive.'

*A.J. Taft Coal Co., Inc. v. Barnhart*, 291 F. Supp. 2d 1290, 1311 (N.D. Ala. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)); *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 504 (M.D. Ala. 1994); *Howell v. Tanner*,

18

650 F.2d 610, 616 (5th Cir. 1981)).  It is important to acknowledge that "[a]ctions between parties from different states will always impose a burden on some of the parties, and it is in the court's broad discretion to examine the relative burdens on all parties involved to determine the most convenient forum."  *A.J. Taft*, 291 F. Supp. 2d at 1298.  Also, a case should not be transferred to another jurisdiction where it would "merely shift inconvenience from the defendants to the plaintiff."  *A.J. Taft*, 291 F. Supp 2d at 1309, 1311 (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)).

The plaintiff argues that the majority of the principal witnesses reside in Alabama, that the documentary evidence that is located in Georgia could easily be transported to Alabama for trial, that the RV in question is located in Alabama, and that the state of Alabama has an interest in this suit to protect its citizens from harm.  (Doc. 18 at A-E).

Mid-State argues that none of the material witnesses other than the plaintiff reside in Alabama, that trial in Alabama would cause undue hardship on Mid-State because the majority of the witnesses are Mid-State employees, all of the individuals who made repairs to the RV are located in Georgia, and that travel costs for Mid-State's employees will "dramatically and unnecessarily" increase Mid-State's litigation expenses (doc. 14 at pp. 11-12); that all of the documents related to the action are located in Georgia and transporting those documents to Alabama would place a disproportionate burden upon Mid-State (doc. 14 at p. 13); that Georgia has a greater interest in regulating conduct occurring within its borders; that Alabama has little interest in having this case litigated in this forum and little connection to the subject matter of the dispute; and, that the Middle District of Georgia has significant interest in ensuring that its corporations are not engaged in any wrongful business practices and in handling claims asserted

19

under the laws of its state - - specifically, the Georgia Lemon Law (doc. 14 at pp. 13-14).

In applying the law to this case, the court finds that transfer of the case to the Middle District of Georgia is appropriate.  The primary events leading to the plaintiff's allegations occurred in Georgia.  The contract that the plaintiff seeks to have rescinded was entered into in Georgia.  In fact, none of the plaintiff's claims are specifically related to Alabama.  By contrast, the plaintiff alleges a violation of the Georgia Lemon Law.  *See Merritt v. Jay Pontiac - GMC Truck, Inc.*, 952 F. Supp. 754, 756 (M.D. Ala. 1996)(quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)("there is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.")).

Additionally, the principal material witnesses, with the exception of the plaintiff and his two fact witnesses, are located in Georgia.  The plaintiff's fact witnesses have already offered affidavit testimony and the extent of their anticipated testimony is apparent and relatively limited.

Next, the relative ease of access to sources of proof are greater for the defendants in Georgia.  The defendants have their business records in Georgia.  Any records in Alabama are limited to the plaintiff's personal records regarding the purchase.[13]

Also, the operative facts underlying the cause of action tilt the scales toward Georgia.  All of the alleged misrepresentations and breaches were made in Georgia.  Although the plaintiff has alleged that one repair occurred in Alabama and that he first discussed purchasing an RV with Mid-State in Alabama, neither of those incidences form the basis of his suit.  The claims made in the plaintiff's complaint are that the defendants breached the contract that was made in Georgia;

---

[13]The court recognizes that this case will not be a document intensive matter compared to many other matters.

the defendants breached the warranty that accompanied the contract that was made in Georgia; that the defendants failed to comply with the Georgia Lemon Law; that the defendants made fraudulent representations on which the plaintiff relied when he purchased the RV in Georgia; and that the defendants have been unjustly enriched as a result of the sale of the RV that is not of the same value as the purchase price.  (Complaint).

All of the aforementioned factors favor transferring this case to the Middle District of Georgia.  Accordingly, the court so finds.

**CONCLUSION**

Premised on the foregoing, Mid-State's motion to dismiss (doc. 5) is due to be denied. Coachmen's motion to join in Mid-State's motion to transfer (doc. 16) is due to be granted. The defendants' motions to transfer venue (doc. 5 & 16) are due to be granted.  The court further finds that Mid-State's motion to adopt the forum selection argument of Coachmen (doc. 20) is moot.  Accordingly, the Clerk of the Court will be directed to transfer this matter to the United States District Court for the Middle District of Georgia.  An appropriate order will be entered contemporaneously herewith.

**DONE**, this the 8th day of August, 2006.

*John E. Ott*
_____
**JOHN E. OTT**
United States Magistrate Judge